UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| REVEREND FRANKLIN C. REAVES, Ph.D., et al., | ) ) ) | Civil Action No.: 4:07-cv-3559-TLW-TER |
| Plaintiffs, | ) ) | |
| -vs- | ) ) | **REPORT AND RECOMMENDATION** |
| CITY OF MULLINS, et al., | ) ) ) | |
| Defendants. | ) ) | |

## I.    INTRODUCTION

Plaintiffs, who are proceeding pro se in this action, assert numerous claims alleging numerous wrongs in relation to the alleged condemnation of property located in the City of Mullins, County of Marion, South Carolina.   Presently before the Court are Defendants Jo A. Sanders, James W. Armstrong, Patricia A. Phillips, D. Wayne Collins, Daniel B. Shelley, Jr, George Hardwick, Mullins Police Department, Russell Bass, City of Mullins, W. Kenneth McDonald, and Terry B. Strickland's (the Mullins Defendants) Motion for Summary Judgment (Document # 99) and Defendants John Q. Atkinson, Eloise W. Rogers, Tom Shaw, Allen Floyd, Milton Troy, Pearly Britt, Elista H. Smith, Kent Williams, K. Donald Fling, and Marion County's (the Marion Defendants) Motion for Summary Judgment (Document # 100).

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), DSC.  This Report and Recommendation is entered for review by the District Judge.

## II.    RELEVANT FACTS

At all times relevant to the Complaint, Defendant Donald Fling was employed by the Marion

County Codes Enforcement Office.[1]  Fling Aff. at ¶ 2.  In that capacity he was responsible for enforcing the County's building, zoning, and fire codes and ordinances, which included condemning properties and structures which were unfit for human habitation and use, posed an unreasonable fire or other risk to human health and safety, and otherwise presented a nuisance.  Id.  During the time period relevant to this action, the City of Mullins did not have a Building Code Enforcement Department.  Id. at ¶ 3; Hardwick Aff. at ¶ 3.  The City of Mullins also lacked the heavy equipment necessary to accomplish the demolitions of houses and other large structures.  Fling Aff. at ¶ 3.  Thus, the Administrator for the County of Marion and the Administrator for the City of Mullins entered into an agreement that the County of Marion would assist the City of Mullins in its condemnation and demolition of property located within the Mullins city limits.  Id.; Hardwick Aff. at ¶ 3.

In early summer of 2006, Fling was notified by City of Mullins officials that there were several nuisance properties located on North Smith Street in Mullins, South Carolina.  Fling Aff. at ¶ 7.  He went to North Smith Street to conduct visual inspections of the properties and to determine whether any were subject to condemnation.  Id.  While there he observed multiple houses and structures that were in a dilapidated condition, in great disrepair, uninhabitable, that had been clearly abandoned, and that presented obvious health and safety hazards: roofs were collapsed, windows were broken, wood on the buildings was rotten, graffiti was painted on the sides of the buildings, lots and structures were overgrown with weeds, etc.  Id.

Specifically, Fling observed a home on a lot, later identified as Tax Map Parcel Number 421-15-02 (the Plaintiffs' property which they allege was 910 North Smith Street, although there was no street number displayed on the structure), that was in a similar, if not worse, state of disrepair as

---

[1]Plaintiffs assert that Fling was not registered as a codes enforcement officer in the state of South Carolina.  However, this question of fact is not material.

the others: the roof was collapsed, the wood on the structure was rotten, the lot and structure was overgrown by weeds and vines, and the house had clearly been abandoned. Id. at ¶ 8. Fling opined that the structure was clearly and irretrievably unfit for human habitation and presented an obvious risk to health and safety. Id. Fling did not take any property from within or without the structures. Id. at ¶ 9. The structures appeared uninhabited except for possible use by drug addicts and vagrants. Id.

Following his visual inspection, Fling went to the tax assessor's office to ascertain the identities of the owners of the nuisance properties on North Smith Street so as to begin condemnation proceedings. Id. at ¶ 10. Since there were no street numbers on any of the nuisance properties, and few street numbers on any other North Smith Street houses in that block, and since there are two different tax maps for North Smith Street (one side of the street is Tax Map 421 and the other side of the street is Tax Map 419), Fling mistakenly determined that the subject property was 902 North Smith Street (Tax Map Parcel Number 419-02-15) and was owned by Donna McMillan. Id. at ¶ 10 and Ex. B. He, therefore, sent the notice of condemnation to Ms. McMillan. Id. The notice advised that the condemnation could be appealed, and that if no appeal was filed the structure would be demolished. Fling Aff. at ¶ 11. When no appeal was filed, the subject property was cleared at the County's expense. Id. at ¶¶ 11-12. After the demolition occurred, it was discovered that the subject property was actually Tax Map Parcel Number 421-15-02 (a/k/a 910 North Smith Street) owned by the Plaintiffs. Id. at ¶ 12.

Fling was the official responsible for initiating and handling all condemnations performed by the County of Marion. Id. at ¶ 4. Defendants John Q. Atkinson, Eloise W. Rogers, Tom Shaw, Allen Floyd, Milton Troy, Pearly Britt, Elista H. Smith, Kent Williams, members of Marion County Council, are not involved in the condemnation of unsafe structures within the County. Id. Fling did not seek County Council's approval prior to instituting condemnation proceedings on any structures, including

those located in the City of Mullins.  Id. The Marion County Council Members were not involved in any way in inspecting, condemning, or clearing any property on North Smith Street.  Id. at ¶ 14.  The City of Mullins also had no involvement with the condemnation of any dilapidated buildings during the time period in question.  Hardwick Aff. at ¶ 4.

## III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317.  Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.    DISCUSSION

Plaintiffs brings this action pursuant 42 U.S.C. § 1983, alleging violations of the Fourth and Fourteenth Amendments; 42 U.S.C. § 1985; the Civil Rights Act of 1964 and 1965; and 18 U.S.C. § 241. Plaintiffs also assert claims for taking of intangible property, violation of separation of powers, failure to train, and malicious prosecution.

### A.    42 U.S.C. § 1983

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey,

Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Plaintiffs first allege that Defendants searched and seized their property in violation of the Fourth Amendment. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment protects property for which an individual maintains a "subjective expectation of privacy that society recognizes as reasonable." Kyllo v. United States, 533 U.S. 27, 33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). A person who voluntarily abandons his property "loses any reasonable expectation of privacy in the property and is consequently precluded from seeking to suppress evidence seized from the property." United States v. Leshuk, 65 F.3d 1105, 1111 (4th Cir.1995). The proper test for abandonment is "'not whether all formal property rights have been relinquished, but whether the complaining party retains a reasonable expectation of privacy in the [property] alleged to be abandoned.'" United States v. Stevenson, 396 F.3d 538, 546 (4th Cir.2005) (quoting United States v. Haynie, 637 F.2d 227, 237 (4th Cir.1980)). Determining whether the complaining party retains a reasonable expectation of privacy must be made from the totality of the circumstances. United States v. Ramapuram, 632 F.2d 1149, 1153 (4th Cir. 1980).

Plaintiffs did not live in or otherwise occupy the structure at issue. The building was in a dilapidated state, to the point that it had to be condemned because it presented an obvious risk to human safety. The roof had collapsed and a significant portion of the structure was open to the elements. The lot was overgrown with weeds, vines, and plants, appearing as if it had not been tended

to in some time. It appeared that the structure was uninhabitable except for possible use by drug addicts and vagrants. Given the totality of the circumstances, Plaintiffs retained no reasonable expectation of privacy in the subject property. The touchstone of the Fourth Amendment is reasonableness. Pennsylvania v. Mimms, 434 U.S. 106, 108-09 (1977) ("the touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of a particular governmental intrusion of a citizen's personal security'" (quoting Terry v. Ohio, 392 U.S. 1, 19 (1968)); Florida v. Jimeno, 500 U.S. 248, 250 (1991) ("the textual touchstone of the Fourth Amendment is reasonableness"); Wyman v. James, 400 U.S. 309, 317-18 (1971) (only unreasonable government encounters proscribed by the Fourth Amendment). Thus, Plaintiffs claims of a Fourth Amendment violation are without merit.

Plaintiffs also allege that Defendants violated their due process rights guaranteed by the Fourteenth Amendment by failing to notify them of the condemnation prior to demolishing the subject property. The Fourth Circuit has held that a federal district court should deny § 1983 relief if state law provides a plaintiff with a viable remedy for the loss of personal property. Yates v. Jamison, 782 F.2d 1182, 1183-84 (4th Cir.1986). Yates involves facts strikingly similar to those in the case at hand. In Yates, the defendant, who was the Superintendent of Building Inspection for the city of Charlotte, or one of his agents, inspected a house owned by the plaintiffs and found it to be unfit for human habitation. Id. at 1183. A local ordinance directed the defendant to demolish the house and remove the debris. Id. Without notifying the plaintiffs of the pending demolition, the defendant and his agents demolished the house. Id. The plaintiffs in Yates brought a § 1983 claim, alleging in their complaint that the defendant's failure to provide notice was the result of the willful and reckless negligence of the defendant in failing to search the public records adequately to ascertain the plaintiffs' correct address while acting in their official capacities as agents of the City of Charlotte. Id. at 1183-84.

The Fourth Circuit held that the plaintiffs' § 1983 claims were barred pursuant to the Supreme

Court's holding in <u>Parratt v. Taylor</u>, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The court

explained <u>Parratt</u> and its progeny as follows:

> In <u>Parratt</u> the Supreme Court held that a state official's random and unauthorized negligent act which caused the loss of a prisoner's personal property was not a violation of due process because the state provided a meaningful postdeprivation remedy. Similarly, in <u>Palmer v. Hudson</u>, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court held that <u>Parratt</u>' s holding includes the intentional destruction of a prisoner's property by a random and unauthorized act, provided the state makes available a meaningful postdeprivation remedy. Thus, <u>Parratt</u> and <u>Palmer</u> established the rule that a government official's random and unauthorized act, whether intentional or negligent, which causes the loss of private property is not a violation of procedural due process when the state provides a meaningful postdeprivation remedy. The rationale is that because the wrongful act is not sanctioned by any established procedure, and because state law provides a means for the plaintiff to be made whole for his loss occasioned by the wrongful act, there has been no denial of procedural due process because the state action is not necessarily complete until the termination of the state's postdeprivation remedy.

<u>Yates</u>, 782 F.2d at 1184. The <u>Yates</u> court found that, because the plaintiffs alleged[2] that their house

was destroyed without notice due to the negligence of the defendant and not by operation of statute or

ordinance, and because the plaintiffs possessed an adequate and meaningful postdeprivation remedy

in the form of an action in state court for inverse condemnation, the claim fell within the rule of <u>Parratt</u>

<u>v. Taylor</u>. <u>Id.</u> at 1185.

In the present case, the evidence presented reveals that the failure to notify Plaintiffs of the

condemnation prior to demolishing the property was a result of the negligence of Fling in reading the

tax assessor's records and not a result of established procedure or policy. In fact, the established law

is that property owners must be afforded notice and an opportunity to be heard, <u>see</u> Marion County

Ordinance 02-06 § 105 (attached as Ex. 1 to the Marion Defendants' Motion); S.C. Code Ann. §§

---

[2]<u>Yates</u> involved a motion to dismiss rather than a motion for summary judgment.

31-15-60 & 31-15-70; S.C. Code Ann. §§ 31-15-360 & 31-15-370, and Fling attempted to comply with that law by providing notice to the person he thought was the owner of the subject property.

Additionally, like in <u>Yates</u>, South Carolina recognizes a cause of action for inverse condemnation. <u>City of Hartsville v. South Carolina Mun. Ins. & Risk Financing Fund</u>, 677 S.E.2d 574, 579, 382 S.C. 535 (2009) (citing <u>Byrd v. City of Hartsville</u>, 365 S.C. 650, 657, 620 S.E.2d 76, 79-80 (2005)) ("The elements of an inverse condemnation are (1) affirmative conduct of a governmental entity, and (2) a taking."). South Carolina also provides a cause of action under the South Carolina Tort Claims Act relating to the loss of personal property. South Carolina Code Ann. § 15-78-30 and its subparts encompass a "loss" of property from an occurrence of negligence proximately caused by a person employed by the State of South Carolina, a state agency, or political subdivision while acting within the scope of his or her employment. Suits brought under the South Carolina Tort Claims Act must be brought in a state court within the boundaries of South Carolina. <u>See</u> S.C.Code § 15- 78-20(e)(providing that the State of South Carolina does not waive Eleventh Amendment immunity, consents to suit only in a court of the State of South Carolina, and does not consent to suit in a federal court or in a court of another State).

Accordingly, because Fling's failure to notify Plaintiffs was due to his negligence and the state provides an adequate postdeprevation remedy, Plaintiffs' have failed to establish a Fourteenth Amendment violation. Additionally, because Plaintiffs cannot show a violation of either the Fourth or the Fourteenth Amendments, they cannot maintain a claim under § 1983.

**B.      42 U.S.C. § 1985**

Plaintiffs assert claims of conspiracy under § 1985. To establish such a claim, a plaintiff must prove, by specific evidence, a conspiracy of two or more people motivated by discriminatory animus to deprive a plaintiff of equal rights which results in injury to the plaintiff as the result of an overt act

committed in furtherance of the conspiracy. <u>Simmons v. Poe</u>, 47 F.3d 1370, 1376 (4th Cir. 1995). The conspiracy must be proved by concrete facts, not mere allegations. <u>Id.</u> at 1376-77.

Plaintiffs assert that the agreement between the City of Mullins and Marion County to allow Marion County to handle condemnations within Mullins city limits establishes the existence of a conspiracy. However, Plaintiffs have failed to present sufficient evidence to establish that the purpose of the agreement was to deprive Plaintiffs of their equal protection of the laws. Thus, their § 1985 claims cannot withstand summary judgment.

### C.    The Civil Rights Act of 1964 and 1965

It is not exactly clear what claims Plaintiffs are asserting under the Civil Rights Act. Plaintiffs allege that Defendants discriminated against them because of their race by "taking Tax Map Numbers of white property owners in Marion County and applying them to African American property owners in the City of Mullins." Complaint at ¶ 104. Regardless of the type of claim Plaintiffs are attempting to assert, they have failed to present sufficient evidence to support this allegation. Therefore, Plaintiffs' claims under the Civil Rights Act fail.

### D.    Malicious Prosecution

There is no independent cause of action for malicious prosecution under § 1983. A "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." <u>Lambert v. Williams</u>, 223 F.3d 257, 261 (4th Cir.2000). In order for a plaintiff to state a section 1983 malicious prosecution claim for a seizure violative of the Fourth Amendment, the defendant must have "seized [plaintiff] pursuant to legal process that was not supported by probable cause and that the criminal proceedings [have] terminated in [plaintiff's] favor." <u>Brooks v. City of Winston-Salem</u>, 85 F.3d 178,

183-84 (4th Cir.1996). No proceedings have been initiated against Plaintiffs nor have Plaintiffs shown that any proceedings were terminated in their favor. Accordingly, this claim is without merit.

### E. Remaining Federal Claims

Plaintiffs' remaining claims–violation of 18 U.S.C. § 241, taking of intangible property, and violation of separation of powers–are also without merit. Title 18 U.S.C. § 241 is a criminal statute that does not give rise to civil liability. In addition, Plaintiffs' vague allegations of a taking of "intangible property" and violation of separation of powers are insufficient to give rise to any liability on the part of Defendants and Plaintiffs have failed to submit evidence to support these allegations. Thus, these claims fail as well.

### F. State Law Claims

Plaintiffs fail to submit sufficient evidence to create a genuine issue of material fact on any of their federal claims. Thus, it is recommended that summary judgment be granted as to those claims. If the district judge accepts this Report and Recommendation, then the original federal jurisdiction claims will be dismissed. Title 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). See also, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir.1989). Therefore, the undersigned recommends that the district judge decline

to retain jurisdiction over Plaintiff's state law causes of action.

## IV.     CONCLUSION

For the reasons set forth above, it is recommended that the Mullins Defendants' Motion for Summary Judgment (Document # 99) be granted, the Marion Defendants' Motion for Summary Judgment (Document # 100) be granted, that Plaintiffs' federal claims be dismissed and that the court decline to exercise jurisdiction over Plaintiffs' state law claims.

s/Thomas E. Rogers, III<br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

July 27, 2009<br>
Florence, South Carolina

**The parties' attention is directed to the important information in the attached notice.**